## Richard F. TOWNS v. VERMONT MUTUAL INSURANCE COMPANY

[726 A.2d 65]

No. 98-259

January 26, 1999. Plaintiff Richard Towns appeals from a grant of summary judgment in favor of defendant Vermont Mutual Insurance Company, holding that defendant was not required to defend and indemnify plaintiff under a homeowner's policy because plaintiff's liability for an unlawful landfill arose from formerly owned property not included as an insured location under the instant policy. We affirm.

The parties do not dispute the facts. Plaintiff owned property on Collins Hill in Johnson from 1972 until he sold it on June 28, 1987. Beginning June 29, 1987, plaintiff owned and occupied a residence in Morrisville. Plaintiff is a named insured under a homeowner's policy issued by defendant that went into effect on the same date as his occupancy of the Morrisville residence began, June 29, 1987, and that remained in effect through June 29, 1997. The insured location listed on the policy is plaintiff's residence in Morrisville.

On September 30, 1996, the Vermont Agency of Natural Resources issued an administrative order alleging that, during the time plaintiff owned the Johnson property, he illegally disposed of fill there. Plaintiff notified defendant of the State's proceeding against him and demanded that defendant defend him pursuant to the policy. Defendant denied coverage.* In June 1997, plaintiff sued defendant for failure to defend and indemnify plaintiff. On cross-motions for summary judgment, the court ruled that the policy excludes coverage for plaintiff's personal liability arising from the Johnson property because the Johnson property is not listed

---

*In addition to the ground for denial addressed herein, the defendant contends that coverage does not exist because there was no "occurrence" since the dumping occurred outside the policy period. The defendant further argues that the State's actions do not constitute a "suit" or "claim" for damages as those terms are used by the policy and that there has not been "bodily injury" or "property damage" as defined by the policy.

546

as a residence premises and therefore is not an insured location. Plaintiff appeals.

At issue on appeal is interpretation of plaintiff's homeowner's insurance policy. The dispute in this case turns on the meaning of an exclusionary clause. The exclusion to personal liability coverage states in pertinent part:

> 1. Coverage E — **Personal Liability** . . . do[es] not apply to "bodily injury" or "property damage": . . . .
> e. Arising out of a premises:
> (1) *Owned* by an "insured";
> (2) Rented to an "insured"; or
> (3) Rented to others by an "insured";
>
> that is not an "insured location."

(Emphasis added.)

Plaintiff contends that the liability coverage exclusions bar coverage for damages arising from premises currently owned by an insured that do not comprise an insured location. He argues that the policy covers any formerly owned property of the insured as such premises are not specifically excluded by the definition. Plaintiff maintains that, since ambiguity in insurance contracts must be resolved against the drafter, see *Garneau v. Curtis & Bedell, Inc.*, 158 Vt. 363, 367, 610 A.2d 132, 134 (1992), we must adopt his reading of the uninsured location exclusion.

Defendant asserts that the provision should be interpreted as unambiguously excluding premises previously owned by an insured. To support this position, it cites to cases from other jurisdictions that have held plaintiff's interpretation is an illogical and unreasonable reading of similar provisions. See *State Farm Fire & Cas. Co. v. Thomas*, 756 F. Supp. 440, 445 (N.D. Cal. 1991) (no reasonable homeowner or insurer would expect such a result); *Wickner v. American Reliance Ins. Co.*, 661 A.2d 1256, 1259 (N.J. 1995) (it would be illogical for policy precluding

coverage for property damages arising out of property owned by insured but unlisted in policy to be interpreted to cover claims simply because insured sold property and hence no longer "owned" property); see also *Huntzinger v. Hastings Mut. Ins. Co.*, 143 F.3d 302, 314-17 (7th Cir. 1998) (discussing issue and holding for insurance company on ground that policy did not cover intentional dumping but only accidental property damage).

Before applying the rule of insurance contract construction that the language must be strictly construed against the insurer, we must first conclude that the language or provision at issue is ambiguous. See 2 L. Russ & T. Segalla, Couch on Insurance § 21.11 (3d ed. 1995). Although we have no easy guidelines by which to gauge whether language in an insurance contract is ambiguous, generally ambiguity exists if language is reasonably or fairly susceptible to different interpretations. See *Northern Sec. Ins. Co. v. Hatch*, 165 Vt. 383, 386, 683 A.2d 392, 394-95 (1996). The fact, however, that a dispute has arisen over the proper interpretation of a contract does not automatically render the language ambiguous. See *Isbrandtsen v. North Branch Corp.*, 150 Vt. 575, 581, 556 A.2d 81, 85 (1988). Further, a term of an insurance contract is not ambiguous if its meaning can be ascertained by fair inference from other terms of the contract. See 2 Russ & Segalla, *supra*, § 21.14. We review the language of an insurance contract from the perspective of what a reasonably prudent person applying for insurance would have understood it to mean. See *id.*

Plaintiff finds ambiguous the temporal aspect of "owned" as it is used in the uninsured location exclusion and therefore urges us to construe the word against the insurer to exclude only premises "currently owned." He reaches the conclusion that the policy covers formerly owned but currently uninsured premises

by focusing narrowly on the word "owned" as it appears in the exclusionary provision. Yet, ambiguity does not arise by isolating a word or phrase from the overall context of a contract. See *id.* By enclosing "insured location" within quotation marks, the section specifically refers the reader back to the definitions.

Thus, we must consider that the policy defines "insured location" first and foremost as the "residence premises" listed in the declarations section, here the Morrisville property. It then advances several additional meanings of "insured location" as, among others: "premises . . . used by you as a residence and . . . [w]hich is acquired by you during the policy period for your use as a residence"; "premises . . . [n]ot owned by an 'insured' . . . [w]here an 'insured' is temporarily residing"; and "[l]and owned by or rented to an 'insured' on which a one- or two-family dwelling is being built as a residence for an 'insured.'" Any ostensible lack of a temporal qualifier for "owned" in the uninsured location exclusion dissipates in the context of the repeated emphasis on premises — whether rented or owned — that are related to current or anticipated residences of the insured. It would be unreasonable to read the uninsured location exclusion apart from the current or anticipated residence characteristics of an "insured location."

A fair inference from the definition of "insured location" is that the policy only covers property where the insured currently resides or on which the insured is building a dwelling with the intent of residing therein. Since the contract coverage does not appear to extend to previously owned premises in the first instance, a reasonable insured would not expect an exclusionary provision to specifically prohibit such coverage. We therefore conclude that the purported ambiguity inhering in the word "owned" is not ambiguous when read together with the definition of an "insured location." See

*Isbrandtsen,* 150 Vt. at 580, 556 A.2d at 85 (contracts must be read in entirety, with eye toward giving effect to all material parts in order to form harmonious whole). Plaintiff cannot by his forced reading of the homeowner's policy garner from the exclusionary provision coverage that is not afforded in the general coverage provisions.

*Affirmed.*