2012 VT 22

## Co-operative Insurance Companies v. Denise Woodward, James Bennett, Individually, and as Administrator for the Estate of Brooke Bennett

[45 A.3d 89]

No. 11-158

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed March 30, 2012

*Robin Ober Cooley* of *Pierson Wadhams Quinn Yates & Coffrin*, Burlington, for Plaintiff-Appellee.

*Paul J. Perkins* of *Plante & Hanley, P.C.*, White River Junction, for Defendant-Appellant James Bennett.

¶ 1. **Reiber, C.J.** James Bennett, the father of Brooke Bennett and the administrator of her estate, appeals the trial court's declaration of no coverage for the claims made in the lawsuit filed against homeowner Denise Woodward for negligent supervision and damages arising out of the abduction, assault, and death of his daughter, Brooke. Homeowner was formerly married to Brooke's uncle, Michael Jacques, who is alleged to have kidnapped, sexually assaulted, and murdered Brooke. Homeowner's insurer brought a declaratory judgment action asking the trial court to hold that its policy does not cover these claims. The trial court decided the case on summary judgment, holding that the insurance policy excludes coverage and father now appeals. We affirm.

¶ 2. On June 25, 2008, uncle allegedly kidnapped, sexually assaulted, and murdered Brooke Bennett. Father's complaint against homeowner alleges uncle acted "with the intention to commit violent and devious harm, personal injury, and criminal acts to said minor child." The complaint alleges that uncle had a "propensity for acting in a depraved, predatory, and harmful

manner towards women" and that homeowner knew or should have known that her husband had a history of predatory behavior towards minor children and women, and was a threat to Brooke.

¶ 3. At the time of Brooke's death, uncle was married to homeowner. Both uncle and homeowner were the named insureds on a homeowners' insurance policy issued by insurer for the period August 2007 to August 2008. The policy's personal liability coverage provision is as follows:

> Coverage L — Personal Liability. "We" pay, up to "our" "limit", all sums for which an "insured" is liable by law because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies. "We" will defend a suit seeking damages if the suit resulted from "bodily injury" or "property damage" not excluded under this coverage.

¶ 4. The policy defined "bodily injury" as "bodily harm to a person and includes sickness, disease, or death." The policy specifically excluded from the definition "bodily harm, sickness, disease, or death that arises out of . . . sexual molestation of any person." "Occurrence" was defined as "an accident, including repeated exposures to similar conditions, that results in 'bodily injury' or 'property damage' during the policy period." The definition of "insured" included the following sentence: "Each of the above is a separate 'insured', but this does not increase 'our' 'limit'."

¶ 5. The policy also contained the following intentional-acts exclusion provision that applied to personal liability coverage:

> 1. Exclusions that Apply to Coverages L and M — This policy does not apply to: . . .
>
> i. "bodily injury" or "property damage":
>
> > (1) which is expected by, directed by, or intended by an "insured";
> >
> > (2) that is the result of a criminal act of an "insured"; or
> >
> > (3) that is the result of an intentional and malicious

act by or at the direction
of an "insured".

¶ 6. The trial court granted summary judgment for insurer, concluding that insurer owed no duty of defense or indemnification in the underlying suit in part because the policy bars coverage for intentional acts by "an insured" that are not "occurrences." The court rejected father's argument that the separate insureds, or severability, clause provides coverage for homeowner because the complaint alleges that uncle committed intentional acts.

¶ 7. On appeal, father reiterates his argument that uncle's alleged intentional acts do not preclude coverage for homeowner because the policy contains a severability clause. He first contends that there was an "occurrence" because, under the purported severability language, father focuses on homeowner's negligent actions exclusive of uncle's intentional ones. His principal argument is that the clause creates ambiguity when read together with the intentional-acts exclusion, and he invites the Court to construe ambiguity against the drafter-insurer and create coverage. Insurer contends that uncle's alleged intentional acts caused Brooke's death, there was no "occurrence," and the intentional-acts exclusion bars coverage. Insurer also claims that the policy does not contain a severability clause, and that even if it does, the clause does not create ambiguity.

¶ 8. We review a grant of summary judgment de novo and apply the same standard as the trial court. *Bradford Oil Co. v. Stonington Ins. Co.*, 2011 VT 108, ¶ 5, 190 Vt. 330, 54 A.3d 983. The trial court's judgment will be upheld if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; see also V.R.C.P. 56(c)(3). Furthermore, interpretation of an insurance policy, like other contracts, is a question of law. *N. Sec. Ins. Co. v. Doherty*, 2009 VT 27, ¶ 7, 186 Vt. 598, 987 A.2d 253 (mem.). Our review is therefore nondeferential and plenary. *Id.*

¶ 9. We give effect to the plain meaning of the terms of the policy. *Id.* ¶ 8. Disputed terms are to be "read according to their plain, ordinary and popular meaning." *Id.* (quotation omitted). If we find ambiguity, we construe the language in favor of coverage, which promotes the "protective purpose" of effectuating the parties' intent that the insured be, in fact, insured. *Id.* Our guiding principle requires us to "review the language of an

insurance contract from the perspective of what a reasonably prudent person applying for insurance would have understood it to mean." *Towns v. Vt. Mut. Ins. Co.*, 169 Vt. 545, 546, 726 A.2d 65, 67 (1999) (mem.).

¶ 10. Insurers have a duty to defend when the claim against the insured "might be of the type covered by the policy." *Garneau v. Curtis & Bedell, Inc.*, 158 Vt. 363, 366, 610 A.2d 132, 134 (1992). In determining whether there is a duty to defend, we compare the language of the policy to the language of the complaint. *Id.* at 366, 610 A.2d at 133-34. The most expansive duty under insurance liability policies is the insurer's duty to defend, but there is no duty to defend when there is no possible factual or legal basis on which the insurer might be required to indemnify. *Id.* at 366, 610 A.2d at 134. Thus, father's claims in the complaint control the analysis.[1]

¶ 11. "If a claim is made or a suit is brought against an insured for damages because of bodily injury that is caused by an occurrence, there is coverage under the policy, unless an exclusion applies." *N. Sec. Ins. Co. v. Perron*, 172 Vt. 204, 210, 777 A.2d 151, 155 (2001). Because the definition of "occurrence" and the intentional-acts exclusion are so interrelated, we consider those issues collectively. See *id.* at 210 n.4, 777 A.2d at 155 n.4 (stating that, "in this case, we believe the better approach is to infuse the definition of 'occurrence' with the policy's specific exclusion of intentional acts to determine if there is coverage under the policy").

¶ 12. The policy provides that an "occurrence" is "an accident, including repeated exposures to similar conditions, that results in 'bodily injury' or 'property damage' during the policy period." The policy does not define "accident," but we have previously explained that its plain meaning is "an event that is

---

[1] Importantly, the complaint claims fault against homeowner for negligent supervision of her now ex-husband, but father does not allege injuries that are "distinct from those associated with [uncle's] intentional and criminal conduct." *Korhonen v. Allstate Ins. Co.*, 2003 ME 77, ¶ 15, 827 A.2d 833. Public policy weighs against coverage for such damages where the parties likely did not contemplate that the insurance policy would cover sexual abuse of children. See *id.* ¶ 14 (noting that, conversely, public policy might not prohibit coverage for an insured whose negligence caused injuries to child distinct from those caused by a coinsured's sexual abuse of child).

undesigned and unforeseen" or an "unexpected happening." *Serecky v. Nat'l Grange Mut. Ins.*, 2004 VT 63, ¶ 17, 177 Vt. 58, 857 A.2d 775 (quotations omitted). The central question in determining whether an act constitutes an "occurrence" is whether the actor intended or expected harm to result from the alleged intentional acts. *Id.* ¶ 19. This is typically a factual question, though "[s]ome actions . . . are so likely to result in injury that, as a matter of law, the court will find that the injury did not result from an accident regardless of the actor's subjective intent or expectations." *Perron*, 172 Vt. at 214, 777 A.2d at 158. Indeed, we may "conclusively presume intent to harm as a matter of law based on the nature and character of the insured's alleged acts." *Id.* In such cases, "the intent to act is the equivalent of the intent to harm." *Serecky*, 2004 VT 63, ¶ 24. We have applied this rule in a number of different factual scenarios, including cases of an adult's sexual abuse of a minor. See *Allstate Ins. Co. v. Vose*, 2004 VT 121, ¶ 19, 177 Vt. 412, 869 A.2d 97 (collecting cases).

■ ¶ 13. We look to the underlying complaint to determine whether there was an "accident" and therefore an "occurrence." *Id.* ¶ 15.[2] The complaint alleges that uncle lured Brooke to his residence "with the intention to commit violent and devious harm, personal injury, and criminal acts." Uncle then allegedly "drugged, sexually assaulted, and murdered Brooke." We presume intent to harm based on uncle's alleged acts — kidnapping, drugging, sexually assaulting, and killing Brooke. These alleged acts are inherently harmful and so certain to cause injury that we must conclude as a matter of law that uncle had intent to harm. It would "fl[y] in the face of all reason, common sense and experience" to hold otherwise. *Serecky*, 2004 VT 63, ¶ 24 (quotation omitted). Because we conclude that the harm that resulted from uncle's actions was intended, there was no "accident" and therefore no "occurrence" as defined in the policy.

■ ■ ¶ 14. Where an insured's tortious acts are intentional, a policy exclusion for intentional acts by "an insured" generally bars

---

[2] The parties disagree about whose alleged acts — homeowner's negligence or uncle's abuse — we look to in determining coverage. The relevant acts are those claimed in father's complaint, which alleges uncle's abuse and murder of Brooke. There are no independent injuries claimed against homeowner. The negligence claim against homeowner "arises from, and is dependent on, the intentional acts" of uncle. *Id.* ¶ 23.

coverage for claims made by any insured under the same policy. *Perron*, 172 Vt. at 220, 777 A.2d at 163. If the exclusion precludes coverage for certain acts by "the insured," noncoverage of one insured does not affect coverage for claims against other insureds. *Id.* at 221-22, 777 A.2d at 163. To illustrate, the insurance contract in *Perron* contained an intentional-acts exclusion that precluded coverage for certain acts by "the insured." *Id.* at 220, 777 A.2d at 162-63. We held that when an exclusion uses the article "the," "the provision applies only to claims brought against the particular insured named in the claim." *Id.* at 220, 777 A.2d at 162. Had it used "an insured," we noted in dicta, the relevant act would have been the intentional tortfeasor's abuse, and if no coverage was found for those actions, the other insureds were similarly uncovered. *Id.* at 221-22, 777 A.2d at 163-64. We stated that where a policy excludes coverage when "an insured" commits an intentional act, the exclusion applies to "all claims which arise from the intentional acts of any one insured, even though the claims are stated against another insured." *Id.* at 220, 777 A.2d at 163 (noting courts have uniformly concluded the same). We later pointed out that there is no "meaningful difference" between the terms "an insured" and "any insured." *Vose*, 2004 VT 121, ¶ 22. In other words, such language has a collective effect and bars all insureds from coverage. Having already concluded that uncle's actions were intentional under the terms of the policy, homeowner would also normally be barred from coverage because the policy at issue uses the collective term "an insured."

¶ 15. Despite this result, father contends that the policy contains a severability clause which would allow homeowner to be covered since uncle, not homeowner, committed an intentional act. There is a division among the jurisdictions that have considered whether a severability clause conflicts with an intentional-acts exclusion, creating ambiguity and thus, coverage. One court notes that "[c]ourts nationwide are split on the general issue whether a severability-of-interests provision in a policy covering multiple insureds alters the otherwise collective effect of an exclusion for the acts of 'an' or 'any' insured." *Minkler v. Safeco Ins. Co. of Am.*, 232 P.3d 612, 615 (Cal. 2010). In *Minkler*, the Supreme Court of California held that an intentional-acts exclusion barring coverage for acts by "an insured" precluded coverage only for the intentional tortfeasor, and not the coinsured who did not commit the acts causing injury. *Id.* at 624. The court reasoned that a

severability clause can be read to apply the policy's coverage and exclusions individually to each insured, creating ambiguity. *Id.* Ambiguity was resolved in favor of the insured in *Minkler*, whom the court concluded would have had a reasonable expectation "that the policies would cover her so long as her own conduct did not fall within the intentional acts exclusion." *Id.*

¶ 16. Assuming, without deciding, that the provision at issue is a severability clause, we conclude that this clause has no effect on — and cannot override — the intentional-acts exclusion for certain acts committed by "an insured." The exclusion here bars coverage for " 'bodily injury' . . . (1) which is expected by, directed by, or intended by an 'insured'; (2) that is the result of a criminal act of an 'insured'; or (3) that is the result of an intentional and malicious act by or at the direction of an 'insured.' " Even if each insured — in this case, uncle and homeowner — is treated as having separate coverage, the exclusionary language remains unambiguous because "an" is collective. Father's contention that the two provisions "simply cannot be reconciled" is therefore without merit. A majority of courts reach the same result. See, e.g., *SECURA Supreme Ins. Co. v. M.S.M.*, 755 N.W.2d 320, 329 (Minn. Ct. App. 2008) ("Use of the phrase 'any insured' in [insurer's] severability clause does not create ambiguity when applying the exclusion."); *J.G. v. Wangard*, 2008 WI 99, ¶¶ 46-49, 753 N.W.2d 475 (holding severability clause did not render "any insured" exclusion ambiguous); *Mut. of Enumclaw Ins. Co. v. Cross*, 10 P.3d 440, 444-45 (Wash. Ct. App. 2000) (holding that "an insured" exclusion was "clear and specific language [that] prevail[ed] over a severability clause, i.e., that an exclusion is not negated by or rendered ambiguous by a severability clause"); *Johnson v. Allstate Ins. Co.*, 1997 ME 3, ¶ 8, 687 A.2d 642 ("An unambiguous exclusion is not negated by a severability clause."); see also *Safeco Ins. Co. of Am. v. White*, 2009-Ohio-3718, 913 N.E.2d 426, ¶ 71 (O'Donnell, J., concurring and dissenting) (collecting cases with majority view). Because exclusions for "an insured" serve to collectively bar all insureds, and because of the weight of decisional authority, we conclude that the clause at issue does not create ambiguity when read in

conjunction with an intentional-acts exclusion referring to "an insured."[3]

*Affirmed.*

---

[3] Because we conclude that language of this clause does not turn an unambiguous exclusion ambiguous, and therefore that uncle's intentional acts bar homeowner from coverage, we do not address insurer's alternative argument that coverage is barred because homeowner "expected" Brooke's injuries to occur. Similarly, having concluded that coverage is barred based on the definition of "occurrence" and the intentional-acts exclusion, we do not reach father's argument that coverage may be found based on the definition of "bodily injury."