**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0120-23

JAMES W. DABNEY,

    Plaintiff-Appellant,

v.

THE OHIO CASUALTY
INSURANCE COMPANY,

    Defendant-Respondent.

_____

Argued March 6, 2025 – Decided March 14, 2025

Before Judges Mawla and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-1487-22.

Eugene Killian, Jr. argued the cause for appellant (The Killian Firm, PC, attorneys; Eugene Killian, Jr., on the briefs).

John T. Coyne argued the cause for respondent (McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys; John T. Coyne, on the brief).

PER CURIAM

Plaintiff James W. Dabney appeals from an August 25, 2023 order granting defendant Ohio Casualty Insurance Company (Ohio Casualty) summary judgment and dismissing his complaint with prejudice. We affirm.

Ohio Casualty sold a comprehensive general liability and directors and officers insurance policy to the Shelburne Cliffs Condominium Owners' Association in Vermont. The policy included a one-million-dollar liability limit for each "wrongful act[,]" with an aggregate limit of two million dollars. It insured the association's "'directors and officers' . . . collectively, and each 'director and officer' individually, . . . while acting within the scope of their duties on behalf of the insured."

The coverage also included "those sums that the insured becomes legally obligated to pay because of a 'loss' due to 'wrongful acts' committed by the insured's 'directors and officers' solely in the conduct of their management responsibilities for the condominium association." The policy defined "wrongful acts" as "any negligent act(s), error(s), or omission(s) directly related to the operations of the condominium property of the [insured]." Lawsuits or "suits" were defined as "civil proceeding(s) in which 'loss' because of 'wrongful acts' to which this insurance applies are alleged." "Loss" means "damages,

A-0120-23

settlements, and/or defense costs[,]" and "claim" means "a demand received by an insured for money, including the service of a 'suit.'"

Part two of section one of the policy contained seventeen exclusions, namely: (g) "'[l]osses' based upon or attributable to the insured gaining any personal profit, remuneration[,] or advantage which is not shared equitably by the [association] or to which the insured is not legally entitled"; (o) "[f]ines or penalties imposed by law"; and (q) "[a]ny 'claim' or 'suit' that is brought by or on behalf of any insured or any person or organization[,] which is controlled by, controls, or is under common control with [the insured]."

Plaintiff's wife, Virginia Gardner, and another association resident, Howard Malovany, sued the association and the Vermont Mutual Insurance Company (Vermont Mutual), the association's insurer, in Vermont state court in a derivative action over the alleged alteration and damage of drainage systems on the association's property. The suit resulted in an August 23, 2018 order requiring the association to restore the property. Plaintiff is an attorney and served as counsel in the derivative action.

On October 31, 2019, plaintiff, who is also a New Jersey resident, was elected to the association's board of directors. Gardner was elected to the board as vice president, and Malovany its president.

A-0120-23

Plaintiff alleged certain outdoor property and drainage systems, owned by the association, were damaged due to "disobedience of two court [o]rders issued August 23, 2018, and September 13, 2018." He further alleged Vermont Mutual's attorney, Susan J. Flynn, Esq., engaged in "misconduct . . . entitl[ing the association] to recover compensatory damages, punitive damages, and attorneys' fees for violation of Vt. Stat. Ann. tit. 8, § 4723, [and] . . . Vt. Stat. Ann. tit. 9, § 2453." Plaintiff claimed Flynn violated the August 23 order and committed multiple intentional torts, including breach of fiduciary duty.

On December 16, 2019, former members of the association's board, Janice Hokenson, Donald Crocker, and Chad Hansen (Hokenson plaintiffs), sued plaintiff, Gardner, Malovany and his wife Cynthia (Hokenson defendants), alleging breach of fiduciary duty and conversion. Three days later, the association held a meeting and voted to terminate Flynn. Plaintiff was not present for the vote, but two of the votes in the affirmative were cast by a corporate representative of two LLCs in which plaintiff was the sole member.

Immediately following Flynn's termination, the association engaged Barr Law Group, which entered appearances on its behalf in the ongoing lawsuits. Barr also filed notices of withdrawal of legal filings, notified Flynn of her

4

termination, and requested she turn over her files related to her representation of the association.

On December 23, 2019, the Hokenson plaintiffs applied for a temporary restraining order (TRO) to invalidate the December 19 vote to terminate Flynn. They alleged plaintiff breached the duty of care by wrongfully casting "unit owner votes" in support of terminating Flynn and the derivative action. Further, as board members, plaintiff, Gardner, and Malovany engaged in "self-dealing or breach of their fiduciary duties[,]" including the duty of care and duty of loyalty. The Vermont court granted the TRO.

The Vermont trial judge was Helen M. Toor. On January 6, 2020, she conducted an evidentiary hearing on the preliminary injunction sought by the Hokenson plaintiffs. On January 30, 2020, she issued an order invalidating Barr's notice of appearance and the withdrawal of Flynn, and instructing plaintiff, Gardner, and the Malovanys to take no further action. The judge found:

> [I]t is clear [the Hokenson plaintiffs] are likely to succeed on the merits of their claim that the vote to retain Barr . . . and fire . . . Flynn was a conflict of interest for . . . Gardner[, plaintiff,] and the Malovanys, because the benefits would flow entirely to them as individuals and against the [a]ssociation . . . . The decision to have new counsel withdraw filings that had put Malovany and Gardner at financial risk, to the

5

detriment of the [a]ssociation's financial interests, is on its face a breach of fiduciary duty. No evidence was presented that Malovany's and Gardner's spouses had interests divergent from theirs. Any financial award against them can be presumed, absent evidence to the contrary, to impact their spouses as well. Therefore, all of them had a personal interest in not paying the [a]ssociation any money, in direct conflict with the [a]ssociation's interest in collecting any such funds. The same is true of the [one to two] million [dollars] in attorney's fees that Gardner and Malovany wish to recover from the [a]ssociation for [the derivative suit] if they succeed on appeal—a substantial portion of which would go to [plaintiff] as counsel in that case. Such a result would clearly be in the interests of the Malovanys and . . . Gardner/[plaintiff], and antithetical to the interests of the [a]ssociation. Thus, [the Hokenson plaintiffs] are likely to succeed on their claims that the Malovanys and Gardner/[plaintiff] breached their fiduciary duties and that their six votes could not be counted towards ratification.

On March 2, 2020, the Hokenson plaintiffs moved for the appointment of a litigation receiver for the association. The judge granted the motion and empowered the receiver to speak and act on behalf of the association in the derivative suit. Plaintiff, Gardner, and the Malovanys moved for leave to appeal from the March 2 order, but their application was denied.

On March 5, 2020, Ohio Casualty acknowledged receipt of the Hokenson defendants' claim for coverage. The claim acknowledgement letter expressly preserved Ohio Casualty's rights to, among other things, "disclaim insurance

6

coverage, in whole or in part, at a later date as warranted."  It also recited the Hokenson plaintiffs' claims that defendants had engaged in self-dealing and breach their fiduciary duties.  Although Ohio Casualty would be investigating the claim, it pointed out certain exclusions could apply and recited exclusions (g) and (q) in addition to a third exclusion irrelevant to our discussion.  The March 5 letter recited that Ohio Casualty's "participation in the defense of the [l]awsuit [did not] waive or change the [p]olicy terms."  Plaintiff countersigned the letter acknowledging the defense pursuant to the reservation of rights.

On March 17, 2020, Ohio Casualty issued a supplemental letter, which acknowledged its receipt of the March 2 court order.  The letter cautioned that, based on a review of the court's order, the claim could be barred by the policy exclusions and pointed out Ohio Casualty continued to reserve its rights as set forth in the March 5 letter.

On April 28, 2020, Ohio Casualty acknowledged receipt of a request by the Hokenson defendants to indemnify them for the costs of the receiver's bond and payment of the receiver's expenses.  It declined coverage for both requests because the receiver's bond did "not qualify as a payment of damages, settlements, and/or defense costs."

A-0120-23

On August 3, 2020, Judge Toor granted the Hokenson plaintiffs summary judgment. She incorporated her findings from her January 30 decision and concluded plaintiff, among other defendants, was liable for breach of his fiduciary duties. The breach occurred because plaintiff was "personally in an adversary role against the [a]ssociation" in the derivative suit. And "[d]irecting new counsel to withdraw legal filings for the obvious purpose of personally benefitting . . . financially, and harming the [a]ssociation financially, was a clear violation of [plaintiff's] duties to the [a]ssociation." The judge reached the same conclusion regarding "the attempt to obtain the privileged records" from Flynn, "which were generated at least in part in her capacity as a lawyer opposing" plaintiff and the others.

The judge dismissed the derivative action with prejudice. The remaining issue was the Hokenson plaintiffs' and the association's applications for attorney's fees and costs.

Judge Toor entered summary judgment against plaintiff, Gardner, and the Malovanys, who subsequently appealed. Ohio Casualty authorized and paid for the filing of "an appellate [d]ocketing [s]tatement" for the appeal. The statement included the following issues on appeal:

> 1. Whether the trial court's [p]reliminary [i]njunction [o]rder and [o]rder [a]ppointing [l]itigation [r]eceiver

A-0120-23

were based on an erroneous interpretation of 11B V.S.A. § 8.31(a) and Vermont law governing common owner voting rights.

2. Whether the trial court's [p]reliminary [i]njunction [o]rder and [o]rder [a]ppointing [l]itigation [r]eceiver were unconstitutional as effecting a private taking of property, as suppressing speech, and as compelling speech.

3. Whether the trial court abused its equity power by granting the [l]itigation [r]eceiver unprecedented powers, including the power to dismiss legal claims and pending actions.

4. Whether the trial court erred in granting summary judgment in favor of [defendants].

5. Whether the trial court erred in dismissing [plaintiffs'] [c]ounterclaims.

Ohio Casualty also agreed to defend plaintiff against the Hokenson plaintiffs' motion for attorneys' fees and costs. On February 10, 2021, Judge Toor found plaintiff, Gardner, and the Malovanys jointly and severally liable to the Hokenson plaintiffs for $208,847 in attorneys' fees and $2,520.42 in costs, plus $59,937.42 to the association.

On March 5, 2021, Ohio Casualty sent the Hokenson defendants a letter, advising it was terminating its obligation to defend them. The letter explained:

Based on the information now known to us, including [the Hokenson plaintiffs'] voluntary dismissal of the damages claims and the [c]ourt's orders

and decisions . . . , we have determined that there is no obligation to defend [plaintiff and co-defendants] in the [l]awsuit or the associated appeal, and that there is no coverage for the [l]awsuit and, in turn, the [a]ward. As set forth below, there is no longer a "suit" seeking "those damages" set forth in the insuring agreement. Therefore, please be advised that we are ceasing reimbursement for defense costs and expenses incurred by independent defense counsel in the [l]awsuit at this time.

. . . .

The claims in the [l]awsuit were based upon allegations that [plaintiff and co-defendants] breached their fiduciary duty and that they were personally in an adversary role against the . . . [a]ssociation. On August 3, 2020, the [c]ourt ruled, concluding that these allegations were true. The [c]ourt granted summary judgment on [the Hokenson plaintiffs'] claim for breach of fiduciary duty with respect to [plaintiff's and co-defendant's] conduct "personally benefitting [them] financially, and harming the [association] financially." Notably, the remaining claims in the [l]awsuit, including intentional conversion, have since been dismissed. Thus[,] the [l]awsuit, as confirmed by the [c]ourt's findings, falls within exclusion g, which precludes "'losses' based upon or attributable to the insured gaining any personal profit, remuneration or advantage which is not shared equitably by the condominium association or to which the insured is not legally entitled." Given that this determination is the sole basis for the [a]ward, the [a]ward is likewise precluded by exclusion g.

Even more preliminarily, if all of [the] claims in the [l]awsuit did not fall within exclusion g, the [l]awsuit ceased falling within the insuring agreement

10

of the [p]olicy's . . . Directors and Officers [Insurance] Coverage Form when the [c]ourt granted [Hokenson's] voluntary dismissal of all their damages counts on November 5, 2020. The [l]awsuit was no longer for "loss," meaning "damages, settlements, and/or defense costs." As such, the [i]nsuring [a]greement was not satisfied[,] and coverage is not implicated.

[The Hokenson plaintiffs'] award of the attorneys' fees and costs they incurred in bringing the [l]awsuit against [plaintiff and co-defendants] does not qualify as "damages, settlements, and/or defense costs." Further, while [the Hokenson plaintiffs] were also awarded their attorneys' fees and costs in defending against counterclaims, the counterclaims (and all . . . fees and costs arising therefrom) are precluded from coverage. Exclusion q bars coverage for any "claim" or "suit" that is brought by or on behalf of any insured.

. . . .

Similarly, the award of the litigation receiver's fees and costs is precluded by exclusion q. The request that the litigation receiver's fees and costs be assessed against the non-prevailing party was made by the [a]ssociation through its receiver. The [c]ourt adopted the receiver's request in awarding these fees and costs. Coverage for this award is barred by exclusion q because the award is based on a "claim . . . brought by or on behalf of an[] insured."

Lastly, the award of fees and costs under 17A V.S.A. Section 4-117(a) are precluded under exclusion o, as a penalty imposed by law.

[(final alteration in original).]

11

On March 10, 2021, plaintiff, Gardner, and the Malovanys settled the underlying action brought by the Hokenson plaintiffs by voluntarily dismissing their own appeal and paying $382,152.12 to settle the judgment entered against them in the February 10, 2021 order. In March 2022, plaintiff sued Ohio Casualty in New Jersey for withdrawing from the defense and failing to pay a judgment entered against him. Ohio Casualty filed an answer, averred plaintiff's settlement was not covered under the policy, and coverage was barred by several exclusions, including (g), (o), and (q). In May 2023, Ohio Casualty moved for summary judgment and plaintiff later cross-moved for summary judgment. On August 25, 2023, the motion judge granted the motion and denied the cross-motion.

The judge made oral findings and concluded the Vermont judgment was entitled to full faith and credit. He declined to reevaluate the record or the Vermont decision, reasoning "[t]he Vermont [S]tate [C]onstitution preempt[ed] th[e c]ourt's jurisdiction, and establishes that [the] Vermont Supreme Court has the core, original and exclusive jurisdiction for review and appeal of the Superior Court of Vermont."

Substantively, the judge took judicial notice of Judge Toor's findings that the firing of Flynn and hiring of Barr "was a conflict of interest [for plaintiff],

. . . both in avoiding personal liability for the[] adversary's attorneys['] fees, and recovering attorneys['] fees personally, [and] was against the interest of the association, as it would not collect any such funds."  The judge noted that,

> [i]n granting summary judgment, Judge Toor found . . . the Hokenson defendants, including plaintiff, . . . did in fact, breach their fiduciary duty, . . . direct[ing] new counsel to withdraw legal findings for the obvious purpose of personally benefiting . . . defendants financially and [harming] the association financially, was a clear violation of defendant's duties to the association.
>
> The same is true of the attempt to obtain the privileged . . . records of the association's prior counsel . . . .

The motion judge also took judicial notice of the February 10, 2021 ruling, which found plaintiff, Gardner, and the Malovanys were "personally, in an adversarial role, to the association, and clearly violated their duties to the association, and subsequently awarded the subject attorneys['] fees and costs to the Hokenson plaintiffs."

The judge addressed the insurance policy.  He applied Vermont law and noted, that much like our law, it required the court interpret the policy like other contracts by "[s]triving to give effect to the intent [of] the parties, as expressed by the plain language of the" policy.  Here the policy obligated Ohio Casualty to cover "a loss due to wrongful acts committed by the insured's directors and

officers, solely in the context of the management responsibilities for the . . . association." The policy defined a wrongful act as "any negligent acts, errors or omissions directly related to the operations of the condominium property of the named insured."

Judge Toor had found plaintiff, Gardner, and the Malovanys breached their duty of loyalty. The motion judge noted: "[i]t was after this finding that [Ohio Casualty] withdrew support, and denied coverage to plaintiff, as it was at this point that plaintiff's wrongful acts transcended any negligence, and the Hokenson plaintiffs withdrew their other claims against plaintiff, warranting a denial in coverage." He concluded exclusion (g) of the policy applied because, "[b]ased on the clear and unambiguous language of the insurance policy, plaintiff's wrongful acts were not covered, and [Ohio Casualty] was entitled to deny coverage."

Even if the award from the Hokenson litigation was covered, exclusion (g), barred a recovery from Ohio Casualty because, it did not cover "losses based upon or attributable to the insured gaining any personal profit, remuneration, or damage, which is not shared equitably by the . . . association, or to which the insured is not legally entitled." Here,

> Judge Toor specifically found that the Hokenson defendants acted in their capacity as board members, in

14

a way as to benefit themselves personally, at the cost of the association. And that plaintiff . . . stood to gain a substantial portion of a [one] to [two] million dollar recovery, at the cost of the association.

Such a loss is a personal profit, not shared equitably with or by the . . . association, and a profit plaintiff was not entitled to.

The motion judge was further convinced by Ohio Casualty's argument exclusions (o) and (q) applied. Exclusion (o) barred defense coverage where the loss was a result of a penalty imposed on the insured. The award of attorneys' fees against plaintiff was not damages but a penalty. And exclusion (q) barred coverage for claims and suits brought by or on behalf of an insured. That exclusion applied because the association, through its receiver, sought to assess the award of the receiver's fees and costs against plaintiff.

I.

We review a ruling on a summary judgment motion de novo, applying the same standard governing the trial court. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). Our task is to consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, . . . are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

15

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013). The "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference" and are reviewed de novo. Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 382-83 (2010).

## II.

Plaintiff concedes Vermont law applies to discerning what Ohio Casualty's obligations were under the policy. He argues that pursuant to Vermont law, Ohio Casualty had a duty to defend him, which included a duty to appeal from the Vermont trial court's adverse rulings. Plaintiff asserts there were reasonable grounds to believe his interests would have been served by an appeal without having to demonstrate the appeal would be successful. He

contends the motion judge could have made this finding while also according the Vermont court's rulings full faith and credit.

Plaintiff claims the motion judge did not view the facts in the light most favorable to him, including that the Hokenson plaintiffs alleged negligence, which was a cause of action covered the policy thereby requiring Ohio Casualty to appeal from the Vermont trial court's rulings. Regardless, the Vermont court's grant of summary judgment did not sever Ohio Casualty's obligation to defend on appeal because the Hokenson action constituted a lawsuit involving an allegation of wrongful acts leading to a loss.

Plaintiff contends Ohio Casualty violated the covenant of good faith and fair dealing notwithstanding its withdrawal of coverage through a reservation-of-rights letter. Rather than recognize there were appealable aspects of the Vermont trial court's ruling, plaintiff claims Ohio Casualty used the conflict of interest as a reason to withdraw from defending him.

Plaintiff reiterates Ohio Casualty is liable to cover the amount he paid to resolve the Hokenson litigation because the attorneys' fees were recovered damages due to the breach of a legal duty. The attorneys' fees were compensatory damages since there is no requirement to show bad faith or

17

deliberate misconduct to sustain an award under Vermont law. Exclusion (o) did not apply because the Vermont judgment did not impose a fine or penalty.

Plaintiff asserts exclusion (q) did not apply merely because the court appointed a receiver due to the breach of the duty of loyalty. The receiver did not bring the suit and acted outside of the control of any insured party. The exclusion also did not apply to "[a]ny 'claim' or 'suit' that is brought by or on behalf of any insured or any person or organization which is controlled by, controls, or is under common control with [the insured]." The Hokenson plaintiffs' suit was brought individually and derivatively on behalf of the association.

## III.

Having considered the record, we affirm substantially for the reasons expressed by the motion judge. We add the following comments.

The motion judge correctly concluded the policy did not cover the Hokenson plaintiffs' litigation because a breach of the duty of loyalty exceeded the scope of the policy, which covered acts of negligence. Under Vermont law, plaintiff had the burden of establishing whether claims are within the scope of the policy. Huntington Ingalls Indus., Inc. v. Ace Am. Ins. Co., 287 A.3d 515, 524 (Vt. 2022). The duty of loyalty included allegations of self-dealing, and

clearly were not negligence based, but instead predicated on claims of misconduct. This was evidenced by the fact the Vermont court granted the Hokenson plaintiffs' injunctive relief and awarded attorneys' fees—neither of which could be considered compensatory damages. Moreover, under Vermont law, attorneys' fees and expenses are considered costs rather than damages. Murphy v. Stowe Club Highlands, 761 A.2d 698, 701 (Vt. 2000).

Like the motion judge, we need not reach plaintiff's arguments regarding exclusions (o) and (q) because Judge Toor's finding that plaintiff, Gardner, and the Malovanys "acted . . . in a way as to benefit themselves personally, at the cost of the association[,]" is indisputable based on the summary judgment record. Therefore, the motion judge correctly found exclusion (g) applied and plaintiff was not entitled to coverage.

Finally, Ohio Casualty did not have a duty to continue the appeal. Neither the plain language of the policy, nor Vermont law, impose such a duty. See Co-operative Ins. Cos. v. Woodward, 45 A.3d 89, 93 (Vt. 2012) (holding no duty to defend where there is "no possible factual or legal basis on which the insurer may be required to indemnify."). The duty to defend was extinguished because plaintiff's actions fell outside the scope of the policy. Therefore, as a matter of

A-0120-23

fact and law, Ohio Casualty had no obligation to prosecute the appeal or cover

the attorneys' fees paid to the Hokenson plaintiffs.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-0120-23