Argued and submitted April 17, reversed and remanded August 13, 2003

## ROBBEN & SONS HEATING, INC.,
### an Oregon corporation,
*Appellant,*

*v.*

## MID-CENTURY INSURANCE COMPANY,
### a foreign corporation,
*Respondent.*

### 0101-01129; A117333

74 P3d 1141

Michael A. Lehner argued the cause for appellant. With him on the briefs was Lehner & Rodrigues, PC.

Todd S. Baran argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Plaintiff insured appeals from a judgment for defendant insurer after a stipulated facts trial. The trial court ruled that defendant did not breach the terms of its insurance policy with plaintiff when it refused to afford more than $50,000 in coverage under its policy for thefts committed by plaintiff's former employee. We review the trial court's ruling, an interpretation of an insurance contract, as a question of law, *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469, 836 P2d 703 (1992), and reverse.

At trial, the parties stipulated to the relevant facts. Plaintiff purchased multi-peril business insurance from defendant for two policy periods: October 1, 1998 through September 30, 1999, and October 1, 1999 through September 30, 2000. Both policy periods had identical coverage regarding "Employee Dishonesty" under the terms of insurance purchased by plaintiff. At the end of the first policy period, defendant issued new declaration pages for the second period. From October 1998 through September 2000, plaintiff's employee, Arloa Plumb, stole plaintiff's checks. She then used the checks to pay monies to herself and to others from plaintiff's bank account.[1] As a result, more than $50,000 in withdrawals occurred from plaintiff's account during each policy term. Plaintiff submitted a timely proof of loss to defendant seeking to recover a total of $100,000 under the employee dishonesty coverage in the policy. However, defendant invoked a coverage limit in the policy of $50,000 on the basis that Plumb's conduct during the two policy periods constituted a single occurrence. Consequently, defendant paid plaintiff $50,000 and refused to pay any additional amount. In this action, plaintiff seeks to recover the remainder of its claim. The trial court ruled that defendant's interpretation of the policy was correct, and plaintiff appeals.

■■ Plaintiff assigns error to the trial court's conclusion that there was only one occurrence under the policy.[2] When

---

[1] Eventually, Plumb was prosecuted for her misconduct and pled guilty to multiple counts of aggravated theft.

[2] Plaintiff also assigns error to the trial court's enforcement of a policy provision that, according to plaintiff, violates ORS 742.246(2) (1999) (requiring an

interpreting an insurance contract, our role is to determine the intention of the parties based on the terms and conditions of the policy. *Hoffman*, 313 Or at 469. Although we construe the contract as a whole and not as separate parts, *id.* at 470, we begin our analysis with the "Employee Dishonesty" clause of the policy. It provides, in part:

"4. * * *

"a. We will pay for direct loss of or damage to the Business Personal Property and 'money' and 'securities' resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:

"(1) Cause you to sustain loss or damage; and also

"(2) Obtain financial benefit * * * for:

"(a) Any employee; or

"(b) Any other person or organization.

"b. We will not pay for loss or damage:

"(1) Resulting from any dishonest or criminal act that you or any of your partners commit * * *.

"* * * * *

"c. The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Employee Dishonesty shown in the Declarations.

"d. All loss or damage:

"(1) Caused by one or more persons; or

"(2) Involving a single act or series or related acts; is considered one occurrence.

"e. We will pay only for loss or damage you sustain through acts committed or events occurring during

explanatory title to be in eight-point capital letters). *See also Fleming v. United Services Automobile Assn.*, 329 Or 449, 459-60, 988 P2d 378 (1999), *adh'd to on recons*, 330 Or 62, 996 P2d 501 (2000) (holding that provisions restricting the rights of an insured that are not preceded by such a title will be ignored in construing the policy). Because we rule for plaintiff on its first assignment of error, we do not reach plaintiff's second assignment of error.

the Policy Period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

"* * * * *

"g.   We will pay only for covered loss or damage discovered no later than one year from the end of the Policy Period."

Plaintiff argues that, under the above provisions, "[t]he insurer makes an unequivocal promise to pay for loss or damage which takes place in the policy period." It perceives a conflict between the provisions that limit coverage to one occurrence and the provisions by which the insurer promises to pay for losses caused by acts in each policy period. It concludes that, because of that conflict, the "occurrence" limitation on coverage cannot be construed to impose an ongoing limit that stretches across multiple coverage periods. It asserts that its interpretation is

"more reasonable because it comports with the understanding of the ordinary insurance consumer that when a policy is renewed and the insured pays an additional premium for a new policy period, he will receive the coverage limits set out on the declarations page for losses in the new policy period."

In response, defendant counters that plaintiff's loss was caused by a single person and that paragraphs 4c and 4d "unambiguously express that a single 'occurrence' is subject to a single limit, and that all loss caused by one person constitutes a single 'occurrence.' " It points to an absence of any language in those provisions that limits an "occurrence" to a particular policy period and asserts that an insured cannot accumulate liability limits beyond a policy period. In its view, plaintiff's renewed policy for October 1999 through September 2000 was not a new policy but, in effect, a continuation of the policy that provided coverage for October 1998 through September 1999. Thus, according to defendant, "all loss caused by one employee is subject to a single $50,000 limit, no matter how many years the policy is in effect."[3]

---

[3] Defendant's interpretation finds support in the majority's holding in *Landico v. American Family Mut. Ins. Co.*, 559 NW 2d 438 (Minn App 1997). We believe that

Paragraph 4e is instructive regarding the parties' positions. The first sentence of the paragraph provides that "[defendant] will pay only for loss or damage you sustain *through acts committed or events occurring during the Policy Period.*" The second sentence of the paragraph provides that, "[r]egardless of the number of years this policy remains in *force or the number of premiums paid, no Limit of Insurance* cumulates from year to year or period to period." The implication of those provisions is that the renewal of a policy is intended to create a new insurance contract, discrete from the contract for the previous policy period.

That understanding is supported by the language of the declaration pages that plaintiff received for each policy period. For each of those time periods, defendant furnished plaintiff declarations pages that indicated the policy period. Following the designation of the policy period, the page provides:

> "If this policy replaces other coverage that ends at noon standard time of the same day this policy begins, this policy will not take effect until the other coverage ends. **This policy will continue for successive policy periods as follows**: If we elect to continue this insurance, we will renew this policy if you pay the required renewal premium for each successive policy period subject to our premiums, rules and forms then in effect."

(Boldface in original.)

The declarations pages also list optional coverages:

| COVERAGE (Specify) | LIMITS OF INSURANCE | DEDUCTIBLE |
| --- | --- | --- |
| OUTDOOR SIGNS | 5,000/OCC | 250 |
| MONEY AND SECURITIES | 10,000/OCC | 250 |
| EMPLOYEE DISHONESTY | 50,000/OCC | 250 |

---

*the dissent's view in that case is more consistent* with Oregon law as explained below.

In contrast to the above provisions, another portion of defendant's policy under "Employee Benefits Liability Coverage" also provides for limitations on coverage. However, it states:

> "The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance."

In other words, with regard to coverage for employee benefits liability, defendant expressly provided in the same policy that the coverage limits extend beyond the policy period. The absence of such a provision with regard to coverage for employee dishonesty suggests that coverage and its limits for latter risk are applicable only for the policy period designated in the declarations pages.

Defendant also relies on *Pierce v. Allstate Ins. Co.*, 316 Or 31, 36-37, 848 P2d 1197 (1993), for the proposition that "a renewal policy does not create a new policy." The issue in *Pierce* was whether ORS 742.502(2) required the defendant insurance company to offer the plaintiff options of mandatory uninsured motorist coverage every time the insured added, deleted or replaced vehicles under the coverage provisions of her policy. 316 Or at 35-36. The court observed that the statutory scheme made clear that the renewal of a motor vehicle liability policy for an additional period does not constitute the issuance of a new policy and that, under the scheme, unless a policy is canceled or nonrenewed by the statutorily required method, it continues in effect. *Id.* at 36-37. Thus, such an insurance policy could be renewed or extended without the issuance of a new policy. *Id.* Defendant does not point us to any comparable statutory scheme governing employee dishonesty coverage, and, in contrast to *Pierce,* the parties in this case appear to agree that the issue is one of contract interpretation, not statutory interpretation.

In summary, defendant's interpretation of the coverage and limits to coverage provided for in paragraph 4 of its

policy would require us to disregard the policy periods listed on the separately issued declarations pages as well as the implications of paragraph 4e. On the other hand, plaintiff's interpretation gives effect to all of the relevant policy provisions and is consistent with the other provisions of the policy. In the context of the circumstances in this case, we hold that the "occurrence" referred to in paragraph 4d was the series of related acts caused by Plumb during the policy period. When that policy period ended, defendant's obligations under its policy for that period also ended. When plaintiff paid an additional premium for an additional policy period, defendant's coverage obligations and the limits on those coverages commenced anew, except where otherwise specifically provided for in the policy. Under the terms of defendant's policy, Plumb's actions in the subsequent policy period constituted a new "occurrence." Therefore, the loss or damage arising out of each occurrence falls within the boundaries of the coverage that plaintiff purchased by the payment of an additional premium, unless coverage is excluded for some other reason. Consequently, the fact that defendant paid the coverage limits for one policy period does not relieve it from paying under the coverage limits for the second policy period.

■        Defendant argues, nonetheless, that plaintiff should be denied recovery because Plumb's actions did not result in a "loss" covered by the policy. Defendant concludes that checks drawn on plaintiff's bank account did not constitute "money" or "security" as defined in the policy. It explains, "Plumb did not cause this loss by taking tangible coins, currency, notes, register checks or the like. That being so, she did not cause a direct loss of 'money.' "

The policy provides, in relevant part, "We will pay for direct loss of or damage to Business Personal Property and 'money' and 'securities' * * *." The definitions section in the policy provide, in part:

"1.   'Money' means:

"a.   Currency, coins and bank notes in current use and having a face value; and

"b.   Travelers checks, register checks and money orders held for sale to the public.

"* * * * *

"5. 'Securities' means negotiable and nonnegotiable instruments or contracts representing either 'money' or other property * * *."

The above definitions for "money" and "securities" also apply to plaintiff's optional coverage for "Money And Securities." In that clause, defendant agrees that it

"will pay for loss of 'money' and 'securities' used in your business *while at a bank or savings institution,* within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the described premises, or in transit between any of these places * * *."

(Emphasis added.)

▪ We disagree with defendant's argument that, because the funds that Plumb converted were in a bank account, they were not "money" as defined by the policy. We think that the ordinary meaning of the word "money" includes money held in a bank account subject to withdrawal by check. *See Webster's Third New Int'l Dictionary* 1458 (unabridged ed 1993). Accepting defendant's limitation on the words "money" and "securities" would require us to impose a qualification to the parties' agreement that they have not expressed. Moreover, adding such a qualification to the definition of "money" in the policy would create an inconsistency regarding defendant's promise to provide optional coverage for loss of money and securities loss "while at a bank or savings institution." Finally, we note that a check is a negotiable instrument, ORS 73.0104(3), and as such falls within the definition for "securities" in the policy.

Reversed and remanded for entry of judgment for plaintiff.