NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 140

No. 2018-095

| | |
|---|---|
| Rainforest Chocolate, LLC | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Addison Unit, |
| | Civil Division |
| | |
| Sentinel Insurance Company, Ltd. | September Term, 2018 |

Helen M. Toor, J.

James W. Runcie of Ouimette & Runcie, Vergennes, for Plaintiff-Appellant.

Richard Windish of Hayes, Windish & Badgewick, Woodstock, for Defendant-Appellee.

PRESENT: Reiber, C.J., Skoglund, Robinson and Carroll, JJ., and Davenport, Supr. J. (Ret.), Specially Assigned

¶ 1.      **SKOGLUND, J.**   In this insurance dispute, appellant, Rainforest Chocolate, LLC (Rainforest), appeals the summary judgment motion granted in favor of appellee, Sentinel Insurance Company, Ltd. (Sentinel). Rainforest argues that the trial court erred in its interpretation of the insurance policy and its conclusion that Rainforest's loss was not covered. We reverse.

¶ 2.      The facts are undisputed. Rainforest was insured under a business-owner policy offered by Sentinel. In May 2016, Rainforest's employee received an email purporting to be from his manager. The email directed the employee to transfer $19,875 to a specified outside bank account through an electronic-funds transfer. Unbeknownst to the employee, an unknown individual had gained control of the manager's email account and sent the email. The employee

electronically transferred the money. Shortly thereafter when Rainforest learned that the manager had not sent the email, it contacted its bank, which froze its account and limited the loss to $10,261.36.

¶ 3. Rainforest reported the loss to Sentinel. In a series of letters exchanged concerning coverage for the loss, Rainforest claimed the loss should be covered under provisions of the policy covering losses due to Forgery, for Forged or Altered Instruments, and for losses resulting from Computer Fraud. Sentinel denied coverage. In a continuing attempt to obtain coverage for the loss, Rainforest also claimed coverage under a provision of the policy for the loss of Money or Securities by theft. Sentinel again denied coverage, primarily relying on an exclusion for physical loss or physical damage caused by or resulting from False Pretense that concerned "voluntary parting" of the property—the False Pretense Exclusion.

¶ 4. After cross-motions for summary judgment, based on a statement of agreed facts, the trial court denied Rainforest's motion, granted Sentinel's motion, and entered judgment in favor of Sentinel. In its conclusion, the court stated:

> The complicated nature of this policy, with its layers of coverages and exclusions, is almost impossible to follow without a compass and a guide. It took the court many hours of reading and rereading the policy and the briefs to reach a clear understanding of how the various provisions fit together. How any insured, however sophisticated, is supposed to determine that it is getting what it paid for with a policy like this is a mystery to the court. Nonetheless, the court concludes that the terms of the policy, while confusing, are not ambiguous and must be enforced as written.

The court held that Sentinel was correct in denying coverage under the False Pretense Exclusion. Rainforest timely appealed.

¶ 5. "This Court reviews summary judgment rulings de novo, applying the same standard as the trial court." Jadallah v. Town of Fairfax, 2018 VT 34, ¶ 14, __ Vt. __, 186 A.3d 1111. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a).

2

Here, there is no dispute over material facts. Instead, this dispute arises around the interpretation of the insurance policy at issue.

¶ 6. When interpreting an insurance policy, this Court follows well-established principles—our "review is nondeferential and plenary." Shriner v. Amica Mut. Ins., 2017 VT 23, ¶ 6, 204 Vt. 321, 167 A.3d 326. "An insurance policy is construed according to 'its terms and the evident intent of the parties as expressed in the policy language.' " Cincinnati Specialty Underwriters Ins. v. Energy Wise Homes, Inc., 2015 VT 52, ¶ 16, 199 Vt. 104, 120 A.3d 1160 (quoting Sperling v. Allstate Indem. Co., 2007 VT 126, ¶ 8, 182 Vt. 521, 944 A.2d 210). An insurance policy "is to be strictly construed against the insurer." Simpson v. State Mut. Life Assurance Co. of Am., 135 Vt. 554, 556, 382 A.2d 198, 199 (1977). "The insurer bears the burden of showing that an insured's claim is excluded by the policy." Shriner, 2017 VT 23, ¶ 6.

¶ 7. Vermont law "requires that policy language be accorded its plain, ordinary meaning consistent with the reasonable expectation of the insured, and that terms that are ambiguous or unclear be construed broadly in favor of coverage." Towns v. N. Sec. Ins., 2008 VT 98, ¶ 21, 184 Vt. 322, 964 A.2d 1150; see also Shriner, 2017 VT 23, ¶ 6 ("We give effect to the terms in an insurance policy according to their plain, ordinary and popular meaning, and our interpretation of an insurance policy is guided by a review of the language from the perspective of what a reasonably prudent person applying for insurance would have understood it to mean." (quotation and alteration omitted)). "Words or phrases in an insurance policy are ambiguous if they are fairly susceptible to more than one reasonable interpretation." Whitney v. Vt. Mut. Ins., 2015 VT 140, ¶ 16, 201 Vt. 29, 135 A.3d 272. Further, "[w]hen a provision is ambiguous or may reasonably be interpreted in more than one way, then we will construe it according to the reasonable expectations of the insured, based on the policy language." Vt. Mut. Ins. v. Parsons Hill P'ship, 2010 VT 44, ¶ 21, 188 Vt. 80, 1 A.3d 1016. However, "the fact that a dispute has arisen as to proper interpretation does not automatically render the language ambiguous." Isbrandtsen v. N. Branch

3

_Corp._, 150 Vt. 575, 581, 556 A.2d 81, 85 (1988). And, "we will not deprive the insurer of unambiguous terms placed in the contract for its benefit." _Shriner_, 2017 VT 23, ¶ 6 (quotation omitted).

¶ 8. With these interpretation principles in mind, we turn to the insurance policy at hand. As the trial court noted, there are several subsections of the policy at the center of our analysis. First, the Special Property Coverage Form (SPC Form) outlines the general "rights, duties, and what is and is not covered" and the additional coverage areas in Section A, and then defines several terms in Section G.

> A. COVERAGE
>
> We will pay for direct physical loss of or physical damage to Covered Property at the premises described in the Declarations (also called "scheduled premises" in this policy) caused by or resulting from a Covered Cause of Loss.
>
> . . . .
>
> 2. Property Not Covered
>
> Covered Property does not include:
>
> . . . .
>
> c. "Money," bullion, numismatic and philatelic property and bank notes or "securities" except as provided in any Additional Coverages or Optional Coverages.
>
> . . . .
>
> 5. Additional Coverages
>
> . . . .
>
> f. Forgery
>
> (1) We will pay for loss resulting directly from forgery or alteration of any check, draft, promissory note, or similar written promises, orders or directions to pay a sum certain in "money" that you or your agent has issued, or that was issued by someone who impersonates you or your agent.
>
> . . . .

4

i. Money and Securities

(1) We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the "scheduled premises," or in transit between any of these places, resulting directly from:

(a) "Theft"

. . . .

G. PROPERTY DEFINITIONS

. . . .

10. "Money" means:

a. Currency, coins and bank notes whether or not in current use

. . . .

22. "Theft" means the act of stealing.

¶ 9.    The policy also contains several exclusions, outlined in Section B of the policy.

B. EXCLUSIONS

. . . .

2. We will not pay for physical loss or physical damage caused by or resulting from:

. . . .

f. False Pretense: Voluntarily parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

¶ 10.    Two endorsements supplement the policy and provide coverage in several areas, including additional forgery coverage and coverage for computer fraud.

A.    The following changes apply . . . to the Special Property Coverage Form, Additional Coverages:

. . . .

1. Covered Property [under forged or altered instrument coverage]

. . . .

  a. Checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

    (1) Made or drawn by or drawn upon by you;

    (2) Made or drawn by one acting as your agent;

  or that are purported to have been so made or drawn

. . . .

  4. Computer Fraud

  The following Additional Coverage is added: We will pay up to $10,000 in any one occurrence for physical loss of or physical damage to "money," "securities," and other property having intrinsic value resulting directly from computer fraud. Computer fraud means any act of stealing property following and directly related to the use of any computer to fraudulently cause a transfer of that property from inside your premises or from a banking institution or similar safe depository, to a person (other than a "messenger") outside those premises or to a place outside those premises.

¶ 11. The crux of this case is whether the False Pretense Exclusion bars coverage for the loss experienced by Rainforest. Rainforest argues that the False Pretense Exclusion does not apply because it only excludes "physical loss or physical damages" and the loss here was not a physical loss.

¶ 12. Recently, the U.S. District Court for the District of Montana interpreted this exact provision in the context of a procedural history, fact pattern, and insurance policy that is virtually the same as the instant case. See Ad Advert. Design, Inc. v. Sentinel Ins., No. CV 17-140-BLG-TJC, 2018 WL 4621744 (D. Mont. Sept. 26, 2018). We find its reasoning and interpretation of the policy sound and convincing, and thus adopt it here.

¶ 13. In Ad Design, an employee received several emails from a supervisor's email account requesting that specific sums be transferred to an outside bank account. Believing the

6

emails were legitimate, the employee wired money from the business's (Ad Design's) account into the specified accounts only to find out, after the transfers were complete, that the emails were fraudulent. Ad Design filed a claim with its insurer, Sentinel, seeking coverage for the loss, but Sentinel denied the claim, explaining that the policy excluded coverage under the False Pretense Exclusion. The only apparent differences between the Ad Design facts and the facts at issue here are: (1) Ad Design made four distinct transfers for a total of $115,595, where Rainforest only made one transfer of $19,875; and (2) Ad Design was not able to limit its loss by freezing its account and thus lost the entirety of the transferred amount, where Rainforest's bank was able to successfully freeze the transfer and limit its loss to $10,261.

¶ 14.    The relevant provisions of the insurance policies in Ad Design and here are identical. The District Court of Montana outlined the same provisions that are at issue here: the SPC Form generally explaining the policy's coverage; additional coverage forms extending coverage for Forgery, Money and Securities, and Computer Fraud; and the False Pretense Exclusion. The court focused on the False Pretense Exclusion, identifying it as the critical issue in the case. Id. at *4. The arguments presented by Ad Design and Sentinel also mirror the arguments advanced by Rainforest and Sentinel here. Ad Design did not dispute that it voluntarily parted with its money as contemplated by the False Pretense Exclusion. It instead asserted that "because electronic funds are intangible, it could not have suffered a 'physical loss.' " Id. Sentinel countered and asserted that the business "lost actual, physical control and possession of its money that it otherwise could have withdrawn from its bank account," and therefore Ad Design was precluded from coverage under the False Pretense Exclusion. Id.

¶ 15.    The District Court of Montana analyzed each of these arguments, starting with Sentinel's. It cited several cases that supported the interpretation that "intangible funds [are] interchangeable with and represent[] what is tangible, i.e. money." Id. (citing In re Oakley, 344 F.3d 709, 713 (7th Cir. 2003) ("[T]hings that are interchangeable should normally be treated the

7

same by the law in order to prevent evasion through easy substitution."); Robben & Sons Heating, Inc. v. Mid-Century Ins., 74 P.3d 1141, 1145 (Or. Ct. App. 2003) ("We think that the ordinary meaning of the word 'money' includes money held in a bank account subject to withdrawal by check.")). The District Court of Montana reasoned that "there is a practical reality that Ad Design's loss of electronic funds was essentially the same as if Ad Design lost an equivalent amount of cash." Ad Design, 2018 WL 4621744, at *4. Thus, it concluded that "it would be reasonable to interpret the Policy to find a physical loss of money occurred based on the facts of this case." Id.

¶ 16. The District Court of Montana then directed its analysis to Ad Design's argument. It agreed with Ad Design that the policy seemed to "make[] a distinction between 'loss or damage' and 'physical loss or physical damage.'" Id. The District Court of Montana further noted that "those terms, and how they are to be applied, are not defined in the policy" and as a result "the [p]olicy is confusing as to what risks are covered and what risks are excluded." Id.

¶ 17. It distinguished three cases with similar fact patterns—business loses money after employee receives email from account purporting to be from supervisor and transfers money as directed—to which Sentinel pointed for support that the exclusion was unambiguous. The District Court of Montana explained that "none of those cases involved an exclusion which required 'physical loss'—they all had exclusions which applied simply to 'loss or damage.'" Id. at *5 (citing Schweet Linde & Coulson, PLLC v. Travelers Cas. Ins. of Am., No. C14-1883RSL, 2015 WL 3447242, at *2 (W.D. Wash. May 28, 2015); Schmidt v. Travelers Indem. Co. of Am., 101 F. Supp. 3d 768, 775 (S.D. Ohio 2015); Martin, Shudt, Wallace, Dilorenzo & Johnson v. Travelers Indem. Co. of Conn., No. 1:13-CV-0498 LEK/CFH, 2014 WL 460045, at *3 (N.D.N.Y. Feb. 5, 2014)).

¶ 18. The District Court of Montana then noted that many courts have found that physical loss "'means that the Covered Property must be tangible; "physical" loss cannot occur to the

8

intangible.' " Ad Design, 2018 WL 4621744, at \*5 (quoting Sentience Studio, LLC v. Travelers Ins., 102 Fed. Appx. 77, 81 (9th Cir. 2004)) (citing Harvard St. Neighborhood Health Ctr., Inc. v. Hartford Fire Ins., No. CV 14-13649-JCB, 2015 WL 13234578, at \*8 (D. Mass. Sept. 22, 2015) (finding "funds deposited into a bank account do not have a physical or material existence and thus, are not susceptible to 'physical loss or damage' "); Florists' Mut. Ins. v. Ludy Greenhouse Mfg. Corp., 521 F. Supp. 2d 661, 680 (S.D. Ohio 2007) (holding "funds deposited into a bank account do not have a 'physical' existence and, thus, are not susceptible to physical loss or damage"); Johnson v. Amica Mut. Ins., 1999 ME 106, ¶ 4, 733 A.2d 977 (collecting cases and stating "[b]ank account funds are not 'tangible property,' because they have no physical presence" and "[r]ather, bank account funds are 'intangible property,' because they have no intrinsic value and merely represent, or are evidence of, value")).

¶ 19.    The District Court of Montana concluded that "[i]n light of this authority and the Policy language, it would [also] be reasonable to interpret the Policy to find Ad Design did not suffer a 'physical loss.' "   Ad Design, 2018 WL 4621744, at \*5.   Because there were two reasonable interpretations of the policy, the District Court of Montana found the False Pretense Exclusion ambiguous and thus construed it against Sentinel.  Accordingly, the District Court of Montana "construe[d] the Policy to mean Ad Design did not suffer a physical loss, and therefore, the False Pretense [E]xclusion d[id] not bar coverage."  Id.  This Court agrees with the District Court of Montana's analysis and concludes that the trial court erred when it determined that the False Pretense Exclusion was unambiguous.

¶ 20.    Here, the trial court conceded that other courts have held transfers of funds are not "physical" because they are the losses of funds on deposit in a bank, rather than losses of cash, such as paper money or coins.  But the trial court explained that it was not persuaded by this rationale because funds held by a bank fell within the policy's definition of "money," which is defined as "[c]urrency, coins and bank notes whether or not in current use."  (Emphasis added.)

9

This is true. See also Town of Ira v. Vt. League of Cities & Towns, 2014 VT 115, ¶ 11, 198 Vt. 12, 109 A.3d 893 (analyzing whether "interest" qualified for coverage under insurance policy that covered loss of "money" via embezzlement and concluding that "the use of the term 'money' refers to liquidity, not to the form of the asset").

¶ 21. But just because funds, whether or not in current use, fall under the policy's definition of "money" does not then lend itself to the automatic conclusion that "money" can only be subject to "physical loss." We find support for this conclusion by comparing the Forgery, Money and Securities, and Computer Fraud provisions. The Forgery provision states that Sentinel "will pay for <u>loss</u> resulting directly from forgery . . . in 'money' " and the Money and Securities provision states that Sentinel "will pay for <u>loss</u> of 'money,' " while the Computer Fraud provision states that Sentinel will pay "for <u>physical loss or physical damage</u> to 'money.' " (Emphases added.) This differing use of "physical loss" and simply "loss" leads this Court to conclude that it cannot be said that all "money" is subject solely to physical loss simply because funds, whether or not in current use, qualify as "money" under the policy.

¶ 22. If Rainforest or another insured business sought to clarify the extent of its coverage, it would likely turn toward the policy language itself and perhaps existing case law interpreting similar policies. However, this search would not have produced a clear, unambiguous answer for a reasonably prudent person. See State Farm Mut. Auto. Ins. v. Colby, 2013 VT 80, ¶ 11, 194 Vt. 532, 82 A.3d 1174 ("We . . . are guided by a review of the language of an insurance contract from the perspective of what a reasonably prudent person applying for insurance would have understood it to mean." (quotation and alteration omitted)). The policy uses the two distinct phrases— "physical loss and physical damage" and "loss and damage"—within different sections throughout the policy, sometimes switching between the two sentence to sentence, which would lead the

average reader to assume there was some difference between them.[*] But, the policy itself does not define or explain the difference between the two phrases. The trial court dismissed this as "sloppy drafting" but sloppiness should not excuse an insurer from covering losses that a reasonable insured party would expect to be covered, based on a reasonable reading and interpretation of the policy language. See Fish v. Nationwide Mut. Ins., 126 Vt. 487, 492, 236 A.2d 648, 652 (1967) ("The insurer most familiar with the subject chooses the words of his undertaking, and it is not unjust to take them in the sense conveyed to the ordinary reader, nor to hold against him in case of real substantial doubt." (quotation omitted)).

¶ 23.    And further, if Rainforest or another insured business looked to caselaw, they would have been met with a similarly opaque answer because for every court that has analyzed a similar issue, there is a different conclusion. As shown by the District of Montana in Ad Design, there is case law that supports both Sentinel's and Rainforest's interpretations. Compare In re Oakley, 344 F.3d at 713 (supporting assertion funds in bank are subject to physical loss by finding funds in banks are interchangeable with cash and tangible), and Robben & Sons Heating, Inc., 74 P.3d at 1145 (same), with Sentience Studio, LCC, 102 Fed. Appx. at 81 ("The Property Coverage Form requires that there be 'direct physical loss' of the Covered Property. This language means that the Covered Property must be tangible; 'physical' loss cannot occur to the intangible."), and Florists' Mut. Ins., 521 F. Supp. 2d at 680 (concluding that "funds deposited into a bank account do not have a 'physical' existence and, thus, are not susceptible to physical loss or damage").

¶ 24.    So, while this Court "will not deprive the insurer of unambiguous terms placed in the contract for its benefit," that is not the case here. Shriner, 2017 VT 23, ¶ 6. Although this

---

[*] Subsection three of the exclusions is not at issue in this case, but exemplifies the differing uses of "physical loss and physical damage" and "loss and damage" throughout the policy. It reads: "We will not pay for loss or damage caused by or resulting from any of the following. But if physical loss or physical damage by a Covered Cause of Loss results, we will pay for that resulting physical loss or physical damage." (Emphases added.)

Court has not previously adopted one interpretation over another, we are convinced that the False Pretense Exclusion is subject to at least two reasonable interpretations, and thus is ambiguous. Therefore, we are bound to interpret it in Rainforest's favor—the loss suffered was not physical, and thus coverage is not barred by the False Pretense Exclusion.

¶ 25.    The question remains whether the loss is covered by any of the provisions, which Rainforest claims provide coverage: Forgery, Money and Securities, and Computer Fraud.  We can quickly dismiss the Computer Fraud provision because it only provides coverage "for <u>physical loss of or physical damage</u> to 'money' . . . resulting directly from computer fraud," and because we concluded that Rainforest's loss was not physical, it is not covered under this provision. However, we remand to the trial court to determine in the first instance whether the remaining provisions provide coverage for Rainforest's loss.

<u>Reversed and remanded</u>.

FOR THE COURT:

Associate Justice