Filed 11/21/25

VERMONT SUPERIOR COURT

Lamoille Unit
154 Main Street
Hyde Park VT 05655
802-888-3887
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 22-CV-03530

---

### Mariah Mitchell v. JTVT, LLC

---

## ORDER ON SUMMARY JUDGMENT AND
## BIFURCATION OF THIRD-PARTY CLAIM

This case involves a 2019 accident in Stowe. Plaintiff Mariah Mitchell, a teacher at Mountain Village School was struck by a falling tree and seriously injured while working outside the School. Plaintiff filed a personal injury suit against defendant JTVT, LLC, the owner of the property where the accident occurred and on which the School operates. JTVT then filed a third-party complaint for breach of contract against the School, alleging that the School breached its lease with JTVT by failing to obtain an insurance policy that provides sufficient coverage to JTVT. The School has now moved for summary judgment on, and to and bifurcate, the third-party claim, and JTVT has cross-moved for summary judgment on the third-party claim. Because there are genuine factual disputes about whether the School's insurance policy provides the coverage required by its lease with JTVT, the competing motions for summary judgment are denied. Additionally and for the reasons set forth below, the motion to bifurcate and stay the third-party claim is granted.

### Background

Unless otherwise noted, the following facts are undisputed. JTVT owns real property located at 192 Thomas Lane in Stowe, which it acquired in 2013. The School was a preexisting tenant on the property.

In April 2019, JTVT and the School executed a Commercial Lease Agreement to govern the School's tenancy going forward. The lease defines the "Leased Property" as "exclusive use of the space shown on the plans appended hereto as Attachment A and non-exclusive use of certain [other] areas and facilities." Mt. Village School's Statement of Undisputed Material Facts (SUMF) ¶ 3.[1]

---

[1] The School submitted over 400 pages of exhibits as a single document attached to its statement of undisputed material facts, without an exhibit list. Despite including multiple copies of the lease (and other exhibits) in this filing, the School has not included the "Attachment A" referenced in Section 1 of the lease, even though the court previously declined to dismiss the case, in part, because this document had not been provided and it was accordingly "not clear" what areas of the 192 Thomas

The lease further provides that the School's use of the "Leased Property" shall be restricted to the use and occupancy of "a childrens' school and the conduct of all business activities incident thereto." SUMF, Exh. 3 §§ 6, 6.1. Additionally, the School's "[u]se and enjoyment of the areas that are appurtenant to the Leased Property shall be subject to the following conditions and restrictions:"

> (a) The entryway, stairway, and hallway must be kept in a clean and orderly condition free of clutter, storage items, trash, rubbish and other materials.

> (b) There shall be no smoking allowed anywhere within the building.

> (c) The access driveway and parking area shall be kept free of impediments or obstructions by vehicles of Lessee or Lessee's employees, clients, suppliers, couriers, and other authorized users.

*Id.*, § 6.2. The lease does not otherwise define what are the "appurtenant areas."

The lease additionally requires the School to obtain insurance coverage and to name JTVT as an additional insured:

> **Insurance.** Lessee covenants and agrees that it will procure and maintain at all times at Lessee's sole cost insurance in such amounts and with such coverage as are necessary or advisable to protect against loss arising from damages, hazards, and liabilities pertaining to or resulting from Lessee's use and occupancy of the Leased Property. Such insurance coverage shall include, but not be limited to, fire and casualty coverage for all Leasehold Improvements; comprehensive general public liability insurance to cover any and all liabilities for bodily injury or death to any person or persons, and damage or destruction of property; so-called Dram Shop liability insurance, if applicable, and such other liability and damage insurance in such amounts as are necessary or advisable to the full reasonable satisfaction of Lessor, for incidents, events, or omissions occurring in the Leased Property or in connection with use of the related facilities and areas appurtenant thereto. Lessee shall name Lessor as an additional insured under all policies required herein, and shall provide Lessor with copies of all insurance policies upon request and at least annually, and more frequently in the event of any changes in coverage or conditions.

SUMF ¶ 7. The lease does not include a separate indemnification provision.

The School engaged insurance agent Hiscock & Boardman to obtain insurance, and told Hiscock & Boardman that JTVT needed to be listed as an additional insured. It is unclear whether the School provided Hiscock & Boardman with the insurance provision, quoted above, from the lease with JTVT.

---

Lane property were conveyed by the lease. *See* Entry Re: Motion to Dismiss Third-Party Complaint 2 (Apr. 5, 2024).

Through Hiscock & Boardman, the School obtained a Commercial General Liability Insurance Policy with Markel Insurance Company, with an effective coverage period of December 6, 2018, to December 16, 2019, with a general aggregate limit of $2,000,000 and an occurrence limit of $1,000,000.

JTVT is not listed as a "Named Insured" under the Markel Policy. The only named insured is "Mountain Village School LLC." SUMF, Exh. 6 (Commercial General Liability Policy Declarations). Section II of the Markel Policy is titled "WHO IS AN INSURED" and provides that the School's "employees" are insured "for acts within the scope of their employment by [the School] or while performing duties related to the conduct of [the School's] business." *Id.* The Section does not identify JTVT specifically or a landlord or owner of leased property generally as "an insured." *Id.* (Commercial General Liability Coverage Form, § 2). Rather, this section states that "[n]o person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named Insured in the Declarations." *Id.*

The Markel policy, however, is modified by a "Child Care General Liability Enhancement Endorsement," which includes an "Automatic Additional Insureds" provision that expressly modifies Section II to add as an additional insured:

**Managers Or Lessors Of Premises**

Any person or organization who leases to [the School] or manages property [the School] rent[s] or lease[s], but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by [the School's] acts or omissions or the acts or omissions of those acting on [the School's] behalf in connection with that part of the premises leased or rented to [the School] and shown on the Declarations.

*Id.* (Child Care Commercial General Liability Enhancement 14-15). The 192 Thomas Lane address is identified on a declaration in the Markel policy. *Id.* (Commercial General Liability Extension of Declarations).[2]

It is not clear from the summary judgment record whether the School provided or discussed the Markel policy with JTVT before this litigation.

Plaintiff Mariah Mitchell was an assistant teacher at the School. On November 1, 2019, Mariah was at work when she went outside to help build a maze for the School's students. While outside, on property owned by JTVT, a large tree fell on Mariah, leaving her seriously injured. Mariah's injury occurred on a common area of the Thomas Lane

---

[2] The court's alterations substitute "the School" and "the School's" for the words "you" and "yours." The Markel policy provides that "the words 'you' and 'your' refer to the Named Insured shown in the Declarations [i.e., the School] and any other person or organization qualifying as a Named Insured under the policy." SUMF, Exh. 6 (Commercial General Liability Coverage Form 1).

property that the School was able to access and use, although the School did not have the exclusive right to use the area, was not responsible for maintaining the area, and did not have the right to remove trees from the area.

The parties dispute whether the School previously requested that JTVT remove the tree that fell on and injured Mariah in November 2019.

Plaintiff filed this case in October 2022 against JTVT alleging claims for negligence and wanton and willful misconduct and seeking damages for her injuries.

JTVT thereafter sued Markel in federal court for a declaration that it is entitled to coverage under the Markel policy for any liability arising from Mariah's claims in this action. *See JTVT, LLC v. Markel Ins. Co.*, No. 23-CV-42. That case is currently stayed pending the outcome of this litigation.

JTVT's third-party complaint against the School, which was filed in December 2023, pleads a single breach-of-contract claim and alleges that the School failed to obtain the insurance coverage required under the lease.

## Analysis

### 1. Summary judgment

The School moves for summary judgment on JTVT's third-party breach of contract claim on three grounds: (i) the School obtained the insurance coverage required by Section 11 of the lease agreement; (ii) Mariah's accident did not occur on the "Leased Property," as defined by the lease agreement; and (iii) JTVT cannot establish damages given that JTVT may obtain coverage if it prevails in its coverage action against Markel.

JTVT cross-moves for summary judgment and argues that the undisputed facts show that the School failed to obtain sufficient coverage under the lease.

"Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hier v. Slate Valley Unified Sch. Dist.*, 2025 VT 2, ¶ 8 (quoting V.R.C.P. 56(a)). "In determining the existence of genuine issues of material fact, courts must accept as true the allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material." *Gates v. Mack Molding Co.*, 2022 VT 24, ¶ 13, 216 Vt. 379 (quotation omitted).

Under the lease, the School was required to insure against, among other things, "loss arising from damages, hazards, and liabilities pertaining to or resulting from [the School's] use and occupancy of the Leased Property" including but not limited to . . . comprehensive general public liability insurance to cover any and all liabilities for bodily injury or death to any person or persons . . . and such other liability and damage insurance in such amounts as are necessary or advisable to the full reasonable satisfaction of [JTVT],

for incidents, events, or omissions occurring in the Leased Property or in connection with use of the related facilities and areas appurtenant thereto," and to name JTVT "as an additional insured under all policies required herein." SUMF ¶ 7.

Pursuant to this provision, the School obtained insurance under the Markel policy that covered JTVT as an additional insured, "but only with respect to liability for 'bodily injury', 'property damage" or "personal and advertising injury" caused, in whole or in part, by [the School's] acts or omissions or the acts or omissions of those acting on [the School's] behalf in connection with that part of the premises leased or rented to [the School] and shown on the Declarations." SUMF, Exh. 6 (Child Care Commercial General Liability Enhancement 14-15).

There are genuine factual disputes concerning whether acquisition of the Markel policy satisfied the insurance provision in the parties' lease.

The scope of coverage under the Markel policy is disputed and will conclusively be determined in the federal coverage action. But there is language in the lease's insurance provision—in particular, the terms "pertaining to," "any and all liabilities," "incidents," "events," and "in connection with use of the related facilities"—that can reasonably be read to require broader coverage than the comparatively narrow language in the Markel policy providing coverage "only with respect to liability . . . . caused, in whole or in part, by [the School's] acts or omissions or the acts or omissions of those acting on [the School's] behalf in connection with that part of the premises leased or rented to [the School] and shown on the Declarations." *See, e.g.*, *Four Oaks Conservation Tr. v. Bianco*, 2006 VT 6, ¶ 7, 179 Vt. 597 (courts interpret lease agreements, like other contracts, according to the parties' intent "as manifested in the plain language").

The lease, however, also includes terms requiring the School to provide copies of the insurance it obtained to JTVT and permitting JTVT the right to demand copies, and that the insurance the School obtained must be to JTVT's "full reasonable satisfaction." SUMF ¶ 7. This "full reasonable satisfaction" term is ambiguous insofar as it is unclear how the parties intended JTVT to indicate the necessary satisfaction, and in any event, there is no evidence in the summary judgment record from which the court can conclude that JTVT was provided a copy of the Markel policy and implicitly or explicitly expressed to the School that it was satisfied with the coverage provided therein.

Finally, as noted by the federal court in the coverage action, there remain unresolved questions as to whether any negligence of the School's employees (either Mariah's or someone else's) may have contributed to the accident in way that could give rise to coverage under the Markel policy language extending coverage for injuries "caused, in whole *or in part*, by . . . the acts or omissions of those acting on [the School's] behalf." *See* SUMF, Exh. 6 (Child Care Commercial General Liability Enhancement 14-15 (emphasis added)); Order on Mot. for Partial Reconsideration (Doc. 83), *JTVT, LLC*, No. 23-cv-42

(Aug. 13, 2024); JTVT's Answer (Oct. 31, 2022) (pleading as an affirmative defense in this case that Mariah's "claims are barred in whole or in part by her comparative fault"); *Rainforest Chocolate, LLC v. Sentinel Ins. Co., Ltd.*, 2018 VT 140, ¶ 7, 209 Vt. 232 ("Vermont law requires that policy language be accorded its plain, ordinary meaning consistent with the reasonable expectation of the insured, and that terms that are ambiguous or unclear be construed broadly in favor of coverage." (quotation omitted)).

Given these unresolved questions, neither party is entitled to summary judgment on JTVT's third-party breach of contract claim against the School.[3]

### 2. Bifurcation

The School also moves to stay and bifurcate the third-party contract claim from the personal injury claim.

Rule 42(b) provides the court with "broad discretion" to order separate trials "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." V.R.C.P. 42(b); *Gardner v. Hokenson*, Nos. 2019-410 & 2020-167, 2021 WL 2545407, at \*4 (Vt. Feb. 5, 2021) (unpub. three-justice entry order). In considering whether to order separate trials, courts may consider a multitude of factors, "but the principal consideration must be which procedure is more likely to result in a just and expeditious final disposition of the litigation." *Gardner*, 2021 WL 2545407, at \*4 (quoting 9A Wright & Miller, Fed. Prac. & Proc. § 2388 (alterations omitted)).

Bifurcation of the third-party claim is appropriate under the circumstances. The federal coverage action has been stayed pending resolution of Mariah's personal injury claim. The third-party claim cannot conclusively be resolved until the coverage question is settled because, at the very least, JTVT's damages will be unknown. If JTVT obtains coverage under the Markel policy, the School's defense to liability may also be strengthened. Moreover, bifurcation will avoid the risk of prejudice and confusion inherent in interjecting insurance issues into the trial on Mariah's personal injury claim against JTVT. *See Duval v. Diamondstone*, 132 Vt. 176, 179 (1974) (noting the longstanding Vermont rule that, generally, "the matter of insurance coverage confuses the issues and creates undue prejudice"). Unlike the liability and damages issues in the personal injury claim, which the court previously declined to bifurcate into separate trials, the personal injury and contract issues are sufficiently distinct that separate trials are unlikely to require significant duplicative testimony. And while bifurcation of the third-party claim may delay the ultimate resolution of the dispute—which was the court's chief concern in denying bifurcation of the liability and damages portions of the personal injury claim—such

---

[3] The School is likewise not entitled to summary judgment on the basis that JTVT cannot establish injury. JTVT faces substantial exposure in this action, has incurred defense costs, and may ultimately not prevail in the federal coverage action.

delay is already baked into the third-party claim given its relationship to the pending federal coverage action.

Accordingly, the court will bifurcate and stay the third-party claim until the personal injury claim and the federal coverage action are resolved. Thus, absent further orders from this court or the federal court in the coverage action, the personal injury claim will be scheduled first for trial in this court, and then once that claim and the federal coverage action are resolved, a separate trial will be scheduled in this court on the third-party breach of contract claim.

## Order

The motions for summary judgment on the third-party claim are DENIED and the motion to bifurcate and stay the third-party claim is GRANTED.

The clerk shall set the case for a pretrial conference on the personal injury claim.

Electronically signed on: 11/19/2025 pursuant to V.R.E.F. 9(d)

_____
Benjamin D. Battles
Superior Court Judge