Filed 01/26/26

VERMONT SUPERIOR COURT
Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-00374

| Christopher LaRose v. Grace Amao et al |
| --- |

## ENTRY REGARDING MOTION

Title:        Motion for Summary Judgment  (Motion: 7)
Filer:        Curtis L. S. Carpenter
Filed Date:   November 10, 2025

The motion is GRANTED.

### Decision on Homesite's Motion for Summary Judgment

Plaintiff Christopher LaRose claims that the residential property he bought from Defendant Grace Amao was not as advertised.  Rather than the newly constructed "Clayton modular home" that he thought he was buying, he alleges that he received a "cobbled together old mobile home with numerous material defects."  In February 2025, with this case underway, a new problem became apparent: after a substantial snowstorm, the roof began to sag, cracking the ceiling underneath.  Mr. LaRose submitted a claim with his homeowner's insurer, which investigated and then denied any liability on the policy.  Mr. LaRose then amended the complaint in this case to assert a coverage claim against Defendant Homesite Insurance Agency, Inc.[1]  Homesite appeared, answered, and promptly filed a motion for summary judgment, arguing that the policy affords no coverage based on the allegations.

Summary judgment is granted when the moving party shows that there is no genuine issue as to any material fact "and the movant is entitled to a judgment as a matter of law." V.R.C.P. 56(a).  Although the court gives the nonmoving party "the benefit of all reasonable doubts and inferences in determining whether there is a genuine issue of material fact, the nonmovant bears the burden of submitting credible documentary evidence or affidavits sufficient to rebut the evidence of the moving party." *Ziniti v. New England Cent. R.R., Inc.*, 2019 VT 9, ¶ 14, 209 Vt. 433 (quotation omitted).

---

[1] The policy itself indicates that it was underwritten and issued by Homesite Insurance Company, but there is no dispute as to Homesite's identity.

1

*Material Facts*

The material facts are undisputed. Other than the policy itself, they consist primarily of Mr. LaRose's own allegations in his amended pleading.

According to the amended complaint, the property damage occurred because, as reported by the engineer hired by Homesite to investigate, the roof was defectively designed and installed (by an agent of Ms. Amao) such that it would not be able to support the weight of reasonably anticipated snowfall for the area. After a snowstorm, sufficient snow accumulated on the roof that it became overburdened and sagged. The ceiling underneath cracked. Mr. LaRose continues to live in and occupy the property.

*The Homesite Policy Coverage Terms*

Whether this damage to the house is covered by the policy primarily presents a legal question of insurance policy interpretation. The basic principles of insurance policy interpretation are as follows:

> When interpreting an insurance policy, this Court follows well-established principles . . . ." "An insurance policy is construed according to 'its terms and the evident intent of the parties as expressed in the policy language.'" An insurance policy "is to be strictly construed against the insurer." "The insurer bears the burden of showing that an insured's claim is excluded by the policy."

> Vermont law "requires that policy language be accorded its plain, ordinary meaning consistent with the reasonable expectation of the insured, and that terms that are ambiguous or unclear be construed broadly in favor of coverage." "Words or phrases in an insurance policy are ambiguous if they are fairly susceptible to more than one reasonable interpretation." Further, "[w]hen a provision is ambiguous or may reasonably be interpreted in more than one way, then we will construe it according to the reasonable expectations of the insured, based on the policy language." However, "the fact that a dispute has arisen as to proper interpretation does not automatically render the language ambiguous." And, "we will not deprive the insurer of unambiguous terms placed in the contract for its benefit."

2

*Rainforest Chocolate, LLC v. Sentinel Insurance Company, Ltd.*, 2018 VT 140, ¶¶ 6–7, 209 Vt. 232 (citations omitted).

The policy covers property damage to the residence up to a limit of $391,000. "Property damage" is defined as "physical injury to, destruction of, or loss of use of tangible property." Policy, Definitions B.9 at Bates 0007. The coverage extends generally to "direct physical loss." Policy, Section I–Perils Insured Against A.1 at Bates 0014. The policy, however, does not extend to certain structural losses as the exclusions provision of the policy provides:

> a. Excluded under Section I–Exclusions; [or]

> b. Involving collapse, including any of the following conditions of property or any part of the property:

>> (1) An abrupt falling down or caving in;

>> (2) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

>> (3) Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to (1) or (2) above; except as provided in E.8. Collapse under Section I–Property Coverages.

Policy, Section I–Perils Insured Against A.2 at Bates 0014.

The plain meaning of these provisions is that, unless Section E.8 says otherwise, there is no coverage for the loss of structural integrity (including the risk of falling down or caving in), including any related "cracking, bulging, sagging, bending, leaning, [or] settling." The exact condition and circumstances of Mr. LaRose's roof and ceiling issue.

Section E.8 does not help Mr. LaRose. It extends "additional coverage" only in the event of "abrupt collapse" as follows, in relevant part:

> a. The coverage provided under this Additional Coverage–Collapse applies only to an abrupt collapse.

b. For the purpose of this Additional Coverage–Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

c. This Additional Coverage–Collapse does not apply to:

(1) A building or any part of a building that is in danger of falling down or caving in;

(2) A part of a building that is standing, even if it has separated from another part of the building; or

(3) A building or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

Policy, Section I–Property Coverages E.8 at Bates 0012.

Mr. LaRose concedes that the house has not collapsed and remains standing, even though it exhibits cracking and sagging.

There is also another relevant exclusion under the policy that exclude coverage for:

Faulty, inadequate or defective:

.  .  .

b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

c. Materials used in repair, construction, renovation or remodeling; or

d. Maintenance.

4

Policy, Section I–Exclusions B.3 at Bates 0018. This exclusion also appears to apply directly to the damage claimed here. Mr. LaRose claims that Ms. Amao hired a roofing contractor, who installed a defectively designed roof, which then sagged under the weight of what should have been a reasonably anticipated load.

Thus, the Policy does not extend coverage to the damage claimed here under Section I–Perils Insured Against A.2, and it is specifically excluded under Section I–Exclusions B.3.

While Mr. LaRose offers a conditional argument on whether these terms are ambiguous, it is unavailing against the straightforward nature and plain language of the exclusions. In his briefs Mr. LaRose seeks to distinguish the exclusions under *Gage v. Union Mut. Fire Ins. Co.*, 122 Vt. 246 (1961) because contrary to Gage, Mr. LaRose's roof did not collapse. Since there was no collapse, he reasons, the collapse-related provisions of the policy do not apply. Therefore, if the exclusions do not categorically apply, then there should be coverage. This argument, however, does not explain why Exclusion B.3 does not apply to what he, in his pleadings against Ms. Amao, has characterized as an improper repair and renovation job.

More broadly, however, *Gage* has no application to the present case. The policy in that case had specific policy language that provided coverage for "Collapse: Loss by collapse shall mean only the collapse of the building(s) or any part thereof." *Id.* at 246. The damage in *Gage* consisted of a "buckled ceiling; the raising of the floor in the center of the cottage with the consequent splitting of the linoleum flooring; plumbing out of line and bent; the sill of the door dropped five inches from a level with the center of the floor; a splitting of the fireplace and a pulling away of the chimney of the fireplace from the building; and a movement of some of the cedar posts off from the cement footings" *Id.* The trial court, with apparently no other relevant policy terms applicable, interpreted "collapse" broadly to include the described conditions, framed as "partial collapse," even though the building remained standing. The Court rejected that sort of definition as "far too expansive to be predicated on the word 'collapse' as it is commonly understood" and reversed. *Id.* at 249. As outlined above, the Homsite Policy has very different language and standards for exclusion. In this respect, Mr. LaRose's analysis compares the apples of his current policy to the oranges of the policy in *Gage.*

Mr. LaRose is also making the same mistake here that the trial court did in *Equinox on Battenkill Management Ass'n, Inc. v. Philadelphia Indemnity Ins. Co., Inc.*, 2015 VT 98, ¶ 17, 200 Vt. 33, another "collapse" case. In that case, the trial court determined there was no coverage under the definition of collapse in *Gage*. But as the Supreme Court explained in its reversal, the policy language at issue in *Equinox* was far more complicated and nuanced, rendering *Gage* entirely unhelpful. "The court's error lies in interpreting the insurance policy in a way that equates its language with the meaning of 'collapse' that we adopted in *Gage* and then basing its decision solely on that interpretation" even though "[t]he difference in [policy] language is great." *Id.* ¶¶ 17, 18.

The point of *Equinox*, as here, is that the language of the policy at issue is what matters. In this case, Section I–Perils Insured Against A.2 expressly restricts coverage from collapses and the itemized conditions related to the concept of collapse, including "cracking, bulging, sagging, bending, [or] leaning." Those are the conditions present in this case. The Policy does not extend coverage to them under Section I–Perils Insured Against A.2; it does not add coverage back under Section I–Property Coverages E.8; and there is no apparent reason that the property damage would not be excluded in any event under Section I–Exclusions B.3.

**Order**

For the foregoing reasons, Homesite's motion for summary judgment is **Granted**, and they are dismissed from the present matter.

Electronically signed on 1/23/2026 3:13 PM pursuant to V.R.E.F. 9(d)

_____
Daniel Richardson
Superior Court Judge